# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| MISSOURI ELECTRIC COOPERATIVES, d/b/a ASSOCIATION OF MISSOURI ELECTRIC COOPERATIVES, *et al.*, | )<br>)<br>)<br>)<br>) |
| Plaintiffs, | ) Case No. 4:16-cv-01901 |
| vs. | ) |
| STATE OF MISSOURI, *et al.*, | ) |
| Defendants. | ) |

## [PLAINTIFFS' PROPOSED] MEMORANDUM AND ORDER

Pending before the Court is Plaintiffs' motion for a temporary restraining order ("TRO") (Doc. No. 14). Plaintiffs seek to enjoin Defendants, their agents or anyone acting on their behalf from executing or enforcing certain provisions of Article VIII, Section 23 of the Missouri Constitution. A hearing on Plaintiffs' motion was held on December 29, 2016, at which counsel for Plaintiffs Missouri Electric Cooperatives, d/b/a Association of Missouri Electric Cooperatives, Association of Missouri Electric Cooperatives-PAC, David Klindt, and Legends Bank and counsel for Defendants State of Missouri, the Missouri Ethics Commission and the individually named Commissioners appeared. For the following reasons, the motion is granted.

## BACKGROUND

The facts, summarized herein, are set forth in Plaintiffs' complaint and suggestions in support of Plaintiffs' motion. MO. CONST. Article VIII, Section 23 was enacted by Missouri voters on November 8, 2016 and became effective December 9, 2016. It makes several changes to Missouri's campaign contribution laws. Relevant to the Motion, Section 23.3(12) allows political contributions to political action committees only from corporations "formed under

chapters 347 to 360, RSMo" (Doc. No. 15-1). Section 23.3(16)(c) also prohibits non-Missouri corporations from contributing to political action committees unless they are a limited liability company authorized to do business in Missouri. In addition, the law prohibits contributions between political committees, also known as PAC to PAC transfers. (Doc. No. 15-1).

Plaintiff Missouri Electric Cooperatives, doing business as Association of Missouri Electric Cooperatives ("AMEC") is an association of nonprofit, member-owned rural electric cooperative membership corporations. AMEC is not organized under chapters 347 to 360 of Missouri law. Rather, it is organized pursuant to the provisions of Chapter 394, RSMo (Rural Electric Cooperatives). (Doc. No. 15-2). AMEC also has at least one member which is not a Missouri domestic corporation and is not authorized to do business in Missouri as a limited liability company. (Doc. No. 15-2). Plaintiff David Klindt is the Vice President of Missouri Electric Cooperatives, d/b/a Association of Missouri Electric Cooperatives ("AMEC"). (Doc. No. 15-2). Because AMEC's members are not formed under chapters 347 to 360, RSMo, they are prohibited from contributing to political action committees, including AMEC-PAC, under Article VIII, Section 23.

Plaintiff Association of Missouri Electric Cooperatives-PAC ("AMEC-PAC") is a political action committee authorized by Chapter 130, RSMo (Campaign Finance Disclosure), and formed and maintained by AMEC. (Doc. No. 15-2). AMEC-PAC has received in the past and desires to continue to receive contributions from AMEC's members, both domestic and foreign. (Doc. No. 15-2). Because AMEC's members are not formed under Chapters 347 to 360, RSMo, AMEC-PAC is prohibited from accepting contributions from AMEC's members under Article VIII, Section 23. AMEC-PAC has also made and received contributions to/from other state political action committees in the past and desires to continue to do so in the future. (Doc.

2

No. 15-2). Article VIII, Section 23.3(12) prohibits contributions between political action committees.

Plaintiff Legends Bank is a Missouri state chartered bank organized pursuant to the provisions of Chapter 362, RSMo. (Doc. No. 1). Legends Bank has made contributions to political action committees formed by members of the Missouri Bankers Association in the past and desires to continue to do so in the future. (Doc. No. 1). Because Legends Bank is not formed under chapters 347 to 360, RSMo, it is prohibited from contributing to political action committees under Article VIII, Section 23.

The legislative session in Missouri begins January 4, 2017. (Doc. No. 15-2). As discussed above, Plaintiffs AMEC and Legends Bank will be unable to speak through political contributions to PACs and Plaintiff AMEC-PAC will be unable to accept contributions from AMEC's members during the session. Other competing companies and special interest organizations organized under Chapters 347 to 360, with interests adverse to those who have contributed to AMEC-PAC, will still be able to donate to PACs to represent their interests. (Doc. No. 15-2).

Plaintiffs claim that the prohibitions on contributions contained in Article VIII, Section 23 violate their First Amendment rights to free speech and assembly, as well as their Fourteenth Amendment equal protection rights. In the instant motion for a TRO, Plaintiffs ask that the Court enjoin Defendants, their agents or anyone acting on their behalf or in concert with them from executing or enforcing Article VIII, Section 23.3(12) and (16)(c). Defendants oppose the entrance of a TRO.

**DISCUSSION**

In determining whether to issue a TRO, the Court must consider the following four factors: (1) the threat of irreparable harm to the movants; (2) the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movants will succeed on the merits; and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). "While no single factor is determinative, the probability of success factor is the most significant." *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013) (quoting *Barrett v. Claycomb*, 705 F.3d 315, 320 (8th Cir. 2013)). The party requesting injunctive relief bears the "complete burden" of proving that an injunction should be granted. *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987).

The Court is satisfied that Plaintiffs are likely to succeed on the merits of its claims. In the Court's view, the case law is directly in Plaintiffs' favor, and their success on the merits is, therefore, likely. The United States Supreme Court has made clear that any regulation targeting speech is subject to strict scrutiny, meaning the proposed regulation must serve a compelling state interest and must be narrowly tailored to achieve that interest. *Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 340 (2010). The only recognized compelling governmental interest in restricting speech is *quid pro quo* corruption and/or the appearance of such corruption when government officials and candidates directly receive large contributions. *McCutcheon v. Federal Election Comm'n*, 134 S.Ct. 1434, 1445 (2014).[1]

---

[1] Although there are slight variations between the state and federal constitutional provisions guaranteeing free speech rights, Missouri courts rely on federal First Amendment analysis when facing an Article I, Section 8 challenge. See *Mo. Libertarian Party v. Conger*, 88 S.W.3d 446 (Mo. banc 2002) (applying the U.S. Supreme Court's decision in *Nixon v. Shrink Missouri Government PAC*, 528 U.S. 377 (2000) and *Buckley v. Valeo*, 424 U.S. 1 (1976) to a Section 8 challenge); *State v. Vanatter*, 869 S.W.2d 754 (Mo. banc 1994) (using First Amendment analysis for both First Amendment and Section 8 challenge).

Article VIII, Section 23.3(12) prohibits political action committees ("PACs") from contributing to any PAC and bans PACs from receiving contributions from certain Missouri entities, including state-chartered banks such as Legends and rural electric cooperatives, such as the members of AMEC, while allowing PACs to receive contributions from other Missouri corporations. The US Supreme Court has found that the risk of *quid pro quo* corruption is not present when funds are contributed to a PAC because the donor cedes control over the funds. *McCutcheon*, 134 S.Ct. at 1452. *Id* ("[T]he risk of *quid pro quo* corruption is generally applicable only to the narrow category of money gifts that are directed, in some manner, to a candidate or officeholder."). "There is . . . less of a danger of *quid pro quo* corruption, such as the sort that one might presume from large contributions given directly to candidates, when a contribution is given to a PAC that does not itself wield legislative power . . ." *Russell v. Burris*, 146 F.3d 563, 571 (8th Cir. 1998). Therefore, there is no compelling state interest to prohibit donations from some entities (PACs, corporations formed outside of Chapters 347 to 360, RSMo, foreign entities) to PACs, but not others.

Even more troubling is the fact that Missouri's law limits speech by some speakers, but not others. The US Supreme Court stated in *Citizens United* that restrictions distinguishing among different speakers, allowing speech by some but not others are prohibited. 558 U.S. at 340. "We find no basis for the proposition that, in the context of political speech, the Government may impose restrictions on certain disfavored speakers." *Id*. Article VIII, Section 23.3(12) prohibits the rural electric cooperative members of Plaintiff Missouri Electric Cooperatives from contributing to PACs because they are organized under Chapter 394, but it would allow competing companies and special interest organizations organized under Chapters 347 to 360 to contribute to PACs. Further, Article VIII, Section 23.3(16)(c) prohibits

5

contributions from foreign corporations, but not some Missouri corporations or foreign LLCs who have registered to do business in Missouri. There is no narrowly tailored compelling state interest to justify allowing a business organized under Chapters 347 to 360 to make contributions to PACs but prohibiting a business organized outside those chapters, or a foreign corporation, from doing so. This distinction cannot withstand reasonable scrutiny, much less the strict scrutiny required given the measure's direct effect on First Amendment freedoms.

The other *Dataphase* factors also militate in Plaintiffs' favor. Because enforcement of Article VIII, Section 23's ban on contributions by certain entities "impairs [P]laintiffs' ability to promulgate and advance their political beliefs and ideas", Plaintiffs face the threat of irreparable harm if a TRO is not granted. *Missouri Republican Party v. Lamb*, 31 F.Supp.2d 1161, 1164 (E.D. Mo. 1999); s*ee also Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").The harm to Plaintiffs is imminent because the Missouri legislative session begins January 4, 2017; if a TRO is not granted, Plaintiffs will be banned from speaking through political contributions to PACs during the session, whereas other competing companies and special interest organizations organized under Chapters 347 to 360, with interests adverse to those who have contributed to AMEC-PAC, will still be able to donate to PACs to represent their interests. (Doc. No. 15-2). The ability of the PACs to raise and distribute funds during the legislative session is fundamental to the Plaintiffs speech rights and their right to petition the Missouri government.

The Court also agrees with Plaintiffs that the balance between that harm and the injury that granting the TRO may cause Defendants tips decidedly towards Plaintiffs. *See Shrink Missouri Government PAC v. Adams*, 151 F.3d 763, 765 (8th Cir. 1998) ("Concerning the

question of substantial harm to other interested parties if an injunction is granted, we are unable to discern any such harm. An order enjoining enforcement of the challenged Missouri campaign contribution limits merely restores the situation that existed before 1994 when the state did not limit campaign contributions."), *vacated by Shrink Missouri Government PAC v. Adams*, 204 F.3d 838, 843 (8th Cir. 2000). Finally, the Court finds that as the "public interest favors protecting First Amendment expression", issuing the TRO is in the public interest. *Northshor Experience, Inc. v. City of Duluth*, 442 F. Supp2d 713, 720 (D. Minn. 2006); *see also Missouri Republican Party*, 31 F.Supp.2d at 1164.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for a Temporary Restraining Order (Doc. No. 14) is **GRANTED**, and that Defendants, their agents, or anyone acting on their behalf or in concert with them are enjoined and restrained from executing, enforcing or acting in reliance on MO. CONST. Article VIII, Section 23.3(12) and Section 23.3(16)(c) in any way until further order of this Court.

**IT IS FURTHER ORDERED** that Plaintiffs shall post within 48 hours a bond in the sum of $500.00 as security, pursuant to Rule 65(c), Fed. R. Civ. P.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this \_\_ day of December, 2016.

CORE/0839104.0003/130767694.3